James E. Barton II (#023888)
Jacqueline Mendez Soto (#022597)
TORRES LAW GROUP, PLLC
2239 West Baseline Road
Tempe, Arizona 85283
(480) 588-6120
James@TheTorresFirm.com
Jacqueline@TheTorresFirm.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Rajasundaram,<br><br>              Plaintiff,<br><br>       v.<br><br>Maricopa County Community College District, a political subdivision of Arizona; Maria Wise, an individual; Craig Santicola, an individual;<br><br>              Defendants. | Case No.:<br><br>**COMPLAINT** |

This Complaint arises out of an employment relationship between Plaintiff, SABINA RAJASUNDARAM ("Plaintiff"), and her former employer, MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT ("MCCCD"). For her Complaint, Plaintiff states as follows:

### THE PARTIES

1.      Plaintiff is a resident of Maricopa County, Arizona, and was an employee of MCCCD at all relevant times.

2.     MCCCD is a political subdivision of Arizona, headquartered and operated in Maricopa County, Arizona.

3.     MCCCD has continuously employed more than 15 employees in the past twenty calendar weeks.

4.     Defendant Maria Wise is, and at all relevant times was, President of GateWay Community College ("GWCC"), a college of the MCCCD network of community colleges.

5.     Defendant Craig Santicola was, at all relevant times, Chair of the Business and Information Technologies Division at GWCC, and Plaintiff's immediate supervisor.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) for matters arising under the Constitution and laws of the United States; 28 U.S.C. § 1367 as supplemental jurisdiction over state claims that are related to the federal claims that they form part of the same case or controversy; 28 U.S.C. §§ 2201 and 2202 for declaratory relief; 29 U.S.C. § 2617 for claims arising under the Family and Medical Leave Act ("FMLA"); and 42 U.S.C. § 2000e-5(f) and (g) for employment discrimination matters under Title VII of the Civil Rights Act of 1968 and injunctive relief therein.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS

### Background

8.     Plaintiff is female, of Asian Indian decent and Indian nationality.

9.     Plaintiff has a Master's degree in Computer Science and is a software engineer.

10.     In or about September 2017, MCCCD hired Plaintiff as adjunct faculty to teach Java programing courses in a computer science program at GWCC known as the Year Up Program.

11.     During the Spring 2019 MCCCD academic semester, Plaintiff applied for a permanent Residential Faculty position with MCCCD in its Business and Information Technologies Division ("BIT Division").

12.     Plaintiff applied for a Residential Faculty position with two of MCCCD's colleges: GWCC where she served as adjunct faculty and Scottsdale Community College ("SCC").

13.     Both GWCC and SCC offered Plaintiff a Residential Faculty position.

14.     GWCC also offered Plaintiff the position of Program Director of the Computer Information Systems ("CIS") within GWCC's BIT Division.

15.     Plaintiff accepted the Residential Faculty position with GWCC as well as the Program Director position of CIS.

**Employment Contract**

16.     Plaintiff's employment with MCCCD was governed by the Residential Faculty Policies ("RFP"), the contract between MCCCD and the Maricopa Community College Faculty Association ("Faculty Association"), the non-exclusive representative of Residential Faculty, including Residential Faculty in their probationary period of employment.

17.     Plaintiff's employment was also governed by the GWCC College Plan.

18.     The CIS Program Director position is an Occupational Program Directorship

under the College Plan.

**Initial Discrimination**

19.     On or about August 3, 2019, the Chair of the BIT Division, Craig Santicola ("Santicola"), informed Plaintiff that she would not be serving as the CIS Program Director.

20.     Santicola informed Plaintiff that she could not serve as CIS Program Director because she was a first-year faculty. According to Santicola, first-year faculty had to focus on teaching.

21.     Santicola also informed Plaintiff that she could serve as CIS Program Director beginning in the Spring 2020 semester.

22.     Santicola placed Brian Rice ("Rice"), a white male, as CIS Program Director instead.

23.     Plaintiff complained to the Vice President of Academic Affairs, Amy Diaz, about being unjustly and unfairly treated with regards to the directorship position.

24.     Diaz acknowledged that incorrect steps were taken. However, she did not remedy the situation.

25.     Thereafter, in or about September 2020, Plaintiff learned that pursuant to the GWCC College Plan, *supra*, she was not excluded from serving as CIS Program Director as had been alleged by Santicola. In fact, pursuant to the College Plan, Plaintiff was the only faculty eligible to serve as CIS Program Director at the time Santicola removed her from the position.

26.     Around the same time that Plaintiff complained of the unjust and unfair

treatment regarding the directorship position, Rice, the now Program Director, denied tutoring services to a Native American student.

27.    Plaintiff assisted the student to obtain the tutoring services that she needed from GWCC.

### Additional Discrimination, Harassment, and Retaliation

28.    Soon after Plaintiff met with the Vice President of Academic Affairs and assisted the Native American student, GWCC, specifically Santicola and Rice, began to retaliate against her.

29.    Human Resources informed Plaintiff that an internal complaint had been lodged against her.

30.    Human Resources informed Plaintiff that the complaint was confidential and that no further information could be given to her.

31.    Santicola also removed Plaintiff from teaching in the Year Up Program, including Java courses within the Year Up Program, which she had taught since the inception of her employment as adjunct faculty.

32.    Santicola also removed Plaintiff from teaching any daytime Java courses, which she had also taught since the inception of her employment as adjunct faculty.

33.    Santicola also replaced Plaintiff's Java courses with Microsoft Office and Excel courses. Considering the level of complexity between Java courses and Microsoft and Excel courses, removing Plaintiff from the Java courses was a downgrade in her employment.

34.    Santicola also changed Plaintiff's teaching schedule to her detriment.

35.     Plaintiff had always taught daytime courses. Santicola changed her schedule to add evening courses.

36.     Santicola hired a male adjunct faculty instructor to teach the daytime Java courses that were previously assigned to Plaintiff.

37.     Santicola also did not place Plaintiff as CIS Program Director beginning in the Spring 2020 as he had stated.

38.     Instead, Santicola placed Wyatt Johnson, a white male, as CIS Program Director.

39.     Based on Santicola's previous representation that Plaintiff would be eligible after one year as residential faculty, Plaintiff then applied for the directorship position in February 2020 to serve as director beginning in with the Fall 2020 semester.

40.     Plaintiff was the only faculty member who applied. Once again, she was the only eligible applicant.

41.     Santicola never responded to her application.

42.     As a first-year Residential Faculty, Plaintiff was in her probationary period, which required her to undergo evaluations under the RFP in what is referred to as "Probationary Faculty Peer Assistance and Review."

43.     Probationary faculty are assigned a Peer Assistance and Review Committee ("PARC") to evaluate the faculty's Individual Development Plan ("IDP"), which is an annual professional growth process through which probationary faculty document their instructional expertise; service to the department or division, college, and district; and professional growth.

44.    The PARC makes a recommendation to the College President on whether the faculty's contract should be renewed, renewed with concerns, or not renewed.

45.    A Peer Assistance and Review ("PAR") team is also appointed to the evaluation process. They are to meet regularly to discuss the faculty member's progress in developing the IDP.

46.    The Vice President of Academic Affairs (or designee), the Division Chair, and a Peer Mentor conducted instructional evaluations of Plaintiff in Fall 2019 and Spring 2020.

47.    Plaintiff obtained great evaluations from faculty, administration and students.

48.    The PARC recommended to the College President, Maria Wise ("Wise"), that GWCC renew Plaintiff's contract for the 2020-2021 academic year.

49.    On April 30, 2020, Wise informed Plaintiff that she would not be supporting the PARC's recommendation and would instead recommend to the Interim Chancellor, Steven Gonzales ("Gonzales"), that her contract not be renewed.

50.    Wise did not provide any reason to Plaintiff as to why she was not in support of the PARC's recommendation and why she would recommend a nonrenewal to the Chancellor.

51.    On May 27, 2020, the Chancellor issued a letter to Plaintiff stating that he would not be renewing her contract as he concurred with Wise's nonrenewal recommendation.

52.    The Chancellor's letter referenced a May 8, 2020 letter from Wise with the

reasons for the nonrenewal.

53.     Plaintiff never received the May 8, 2020 letter.

54.     GWCC admitted that it never sent Plaintiff the May 8, 2020.

55.     MCCCD provided the May 8, 2020 letter to Plaintiff after she requested it.

56.     In the May 8, 2020 letter, Wise sets forth the reasons why she recommended the nonrenewal.

57.     Wise's alleged reasons for not renewing Plaintiff's contract were unrelated to the PARC's evaluations.

58.     Wise made false statements in the May 8 letter, falsely accusing Plaintiff of intellectual dishonesty, exploitation of students, not meeting professional standards, and not prioritizing responsibilities.

59.     Upon information and belief, Wise and Santicola collaborated with each other to make the false statements against Plaintiff and her conduct as a faculty member.

60.     GWCC never gave notice to Plaintiff of the false allegations in Wise's letter to the Chancellor.

61.     These allegations were never discussed with Plaintiff either through the PARC process or any other process.

62.     Wise and Santicola acted with the intent to harm Plaintiff's employment and in fact caused her termination.

63.     MCCCD failed to afford Plaintiff due process procedures under the RFP and as constitutionally required.

64.     GWCC and MCCCD's actions of terminating a faculty member's

employment under similar allegations as those raised against Plaintiff is unprecedented.

65.     When GWCC and MCCCD have concerns over a probationary faculty performance, they will renew a faculty with concerns and afford the faculty an opportunity for improvement.

66.     The same opportunity that is afforded to other white faculty members was not provided to Plaintiff.

67.     Plaintiff received great evaluations and the PARC recommended her renewal.

68.     Therefore, the reasons created by Wise and Santicola for her termination were pretextual.

**The RFP**

69.     The RFP provides faculty members, including probationary faculty, specific due process procedures if the faculty member is recommended for dismissal.

70.     Wise and MCCCD failed to provide and follow the due process procedures provided under the RFP.

71.     New faculty go through a five-year probationary period with MCCCD.

72.     As previously stated, the PARC makes a recommendation of renewal, renewal with concerns, or nonrenewal of the probationary faculty member's contract.

73.     If there are concerns with the faculty member's performance, the PARC may recommend to the College President, or the College President may recommend to the Chancellor, that the faculty member's contract be renewed with concerns for the faculty member to improve his/her performance.

74. The PARC appointed to Plaintiff recommended her contract renewal to the College President, Wise.

75. Wise's action to recommend nonrenewal was unprecedented and discriminatory.

76. The reasons Wise gave for the nonrenewal were false and pretextual.

77. Wise improperly and intentionally used the PARC process to unlawfully terminate Plaintiff's employment.

**FMLA Request**

78. In or about January 2020, prior to her termination, Plaintiff experienced emotional distress and aggravated medical conditions due to GWCC's retaliatory tactics.

79. Plaintiff requested leave under the Family and Medical Leave Act ("FMLA").

80. GWCC denied her leave requested claiming that Plaintiff did not work sufficient hours to claim leave under the FMLA.

81. Plaintiff had worked sufficient hours to be eligible for leave under the FMLA.

82. MCCCD wrongly denied Plaintiff's FMLA request.

**EEOC Charges**

83. On May 19, 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based on race, color, and sex, for MCCCD's actions from August 2019 to May 2020. (EEOC Charge No. 540-2020-03138).

84.     On July 9, 2020, Plaintiff filed a second charge of discrimination with the EEOC for her retaliatory discharge. (EEOC Charge No. 540-2020-03776).

85.     Plaintiff intends to amend this Complaint upon a determination from the EEOC on her pending charges.

### Notice of Claim, A.R.S. § 12-821.01

86.     Thereafter, on January 24, 2020, Plaintiff issued a Notice of Claim to MCCCD, GWCC, Santicola, and Rice based on claims for breach of contract, wrongful FMLA denial, and discrimination and retaliation under Title VII of the Civil Rights Act of 1968.

87.     On July 6, 2020, Plaintiff filed an amended notice of claim to include Wise and the additional claims arising from her termination.

### CLAIMS

### Count 1
### Fourteenth Amendment Equal Protection Violation, § 1983
### (Against MCCCD and Wise)

88.     Plaintiff incorporates the allegations set forth above as though fully set forth herein.

89.     The Fourteenth Amendment to the United States Constitution protects a person from being subjected to discrimination, by persons acting under color of state law, because of their race, color, and sex.

90.     Plaintiff is a member of a protected class: she is female, of Asian Indian decent and Indian nationality, and a person of color.

91.     Defendants MCCCD and Wise, acting under color of state, intentionally

discriminated against Plaintiff by removing her from the Program Director position, detrimentally changing the terms and conditions of her employment in retaliation for her complaints of discrimination.

92.     Defendants MCCCD and Wise, acting under color of state, also intentionally discriminated and retaliated against her by terminating her employment.

93.     MCCCD and Wise's alleged reasons for terminating Plaintiff are pretextual and false.

94.     MCCCD and Wise used the procedures within the RFP to deny Plaintiff equal protection rights.

95.     Other employees who are not in Plaintiff's protected class have been given the protections that Plaintiff was denied.

96.     MCCCD and Wise's conduct was objectively unreasonable and undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's rights.

97.     As a result of the violations, Plaintiff has suffered humiliation, distress, inconvenience, and loss of enjoyment of life, for which she is entitled to compensatory damages.

98.     The acts described above have caused and continue to cause damages to Plaintiff, and if not enjoined, will continue to cause damage to Plaintiff.

99.     Plaintiff seeks declaratory relief and nominal and compensatory damages against Defendants.

//

//

**Count 2**
**Procedural and Substantive Due Process Violation, § 1983**
**(Against MCCCD and Wise)**

100.     Plaintiff incorporates the allegations set forth above as though fully set forth herein.

101.     Plaintiff, a public employee, had a cognizable property interest in continued employment.

102.     The Residential Faculty Policies (RFP) created a property right for Plaintiff's continued employment. (RFP at § 3.12).

103.     The RFP provided Plaintiff with specific processes, notice requirements, and a right to a hearing.

104.     Plaintiff was denied all due process procedures under the RFP.

105.     The Defendants' actions were also substantively arbitrary and wrongful, in that they hid their unlawful actions under the guise of the PARC process to terminate Plaintiff. Defendants concocted false charges against Plaintiff to terminate her because they knew they could not terminate her based on her excellent PARC evaluations. Yet, Defendants took advantage of Plaintiff's probationary status to terminate her under the PARC process.

106.     MCCCD and Wise's conduct was objectively unreasonable and undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's rights.

107.     As a result of the violations, Plaintiff has suffered humiliation, distress, inconvenience, and loss of enjoyment of life, for which she is entitled to compensatory damages.

108.    The acts described above have caused and continue to cause damages to Plaintiff, and if not enjoined, will continue to cause damage to Plaintiff.

109.    Plaintiff seeks declaratory relief and nominal and compensatory damages against Defendants.

### Count 3
### Violation of Liberty Interest Under Fourteenth Amendment, § 1983
### (Against All Defendants)

110.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

111.    A dismissal from employment violates an employees Fourteenth Amendment liberty interest if the dismissal stigmatizes the employee with charges of moral turpitude or dishonesty.

112.    The allegations levied by Wise and Santicola against Plaintiff were false, and they were directly related to Plaintiff's professional honesty and reputation as a member of academia.

113.    Wise published these allegations to the Chancellor, which caused Plaintiff's termination.

114.    The Chancellor republished the false allegations in his termination letter to Plaintiff.

115.    These false allegations against Plaintiff remain a part of her personnel file with MCCCD and has affected Plaintiff's ability to seek and obtain employment within her field.

116.    Defendants' conduct was objectively unreasonable and undertaken

14

intentionally with malice, willfulness, and reckless indifference to Plaintiff's rights.

117.   As a result of the violations, Plaintiff has suffered humiliation, distress, inconvenience, and loss of enjoyment of life, for which she is entitled to compensatory damages.

118.   The acts described above have caused and continue to cause damages to Plaintiff, and if not enjoined, will continue to cause damage to Plaintiff.

119.   Plaintiff seeks declaratory relief and nominal and compensatory damages against Defendants.

**<u>Count 4</u>**
**Violation of Equal Rights, 42 U.S.C. § 1981**
**(Against All Defendants)**

120.   Plaintiff incorporates the allegations set forth above as though fully set forth herein.

121.   Section 1981 affords all persons within the jurisdiction of the United States the same right to make and enforce contracts, which includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by white citizens.

122.   Defendants intentionally deprived Plaintiff of the same rights in and to her employment contract because of her race, color, ethnicity, and national origin. Specifically, Defendants denied Plaintiff the opportunity to due process and continued teaching in the Year Up Program, Java courses, and daytime courses, as enjoyed by white employees

123.   Moreover, white employees have not been terminated or disciplined for actions allegedly engaged in by Plaintiff, which alleged actions are false in the first place.

124.   In addition, Santicola's removal of Plaintiff from the Program Director position, an interference with Plaintiff's right to make and enforce contracts, was also intentionally done because of Plaintiff's race, color, ethnicity, and national origin.

125.   Defendants' conduct was objectively unreasonable and undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's rights.

126.   As a result of the violations, Plaintiff has suffered humiliation, distress, inconvenience, and loss of enjoyment of life, for which she is entitled to compensatory damages.

127.   The acts described above have caused and continue to cause damages to Plaintiff, and if not enjoined, will continue to cause damage to Plaintiff.

128.   Plaintiff seeks declaratory relief and nominal and compensatory damages against Defendants.

**Count 5**
**FMLA Violations**
**(Against MCCCD)**

129.   Plaintiff incorporates the allegations set forth above as though fully set forth herein.

130.   Due to the emotional distress caused by Defendants' harassment and retaliation, Plaintiff suffered emotional distress and aggravated medical conditions.

131.   Plaintiff was entitled to FMLA leave.

132.   Plaintiff requested leave under the FMLA.

133.   MCCCD denied her FMLA claim, wrongly asserting that Plaintiff did not qualify.

134.   MCCCD thus violated Plaintiff's right to FMLA leave.

## Count 6
## Defamation/Liber Per Se
## (Wise and Santicola)

135.   Plaintiff incorporates the allegations set forth above as though fully set forth herein.

136.   Santicola and Wise collaborated to create false charges against Plaintiff.

137.   Santicola and Wise knew that they could not terminate Plaintiff based on her excellent evaluations, and thus, they concocted false claims against her to have her terminated under the PARC process.

138.   The false allegations raised against Plaintiff brought Plaintiff into disrepute, contempt, ridicule, and impeached her honesty, integrity, virtue and reputation.

139.   Wise published the false statements in her May 8, 2020 letter to the Chancellor to cause Plaintiff's termination.

140.   Santicola and Wise knew their statements were false and that the statements defamed Plaintiff.

141.   Defendants' conduct was objectively unreasonable and undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's rights.

142.   As a result of the violations, Plaintiff has suffered humiliation, distress, inconvenience, and loss of enjoyment of life, for which she is entitled to compensatory damages.

143.   The acts described above have caused and continue to cause damages to Plaintiff.

### Count 7
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

144.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

145.    Defendants' relentless retaliation actions against Plaintiff, from filing confidential complaints with Human Resources, removing her from the directorship position, the Year Up Program, and Java classes, and redoing her course schedule to make her teach on an evening schedule, were intentional actions to harass and cause Plaintiff distress.

146.    Defendants actions of falsely accusing her of conduct that brought her into disrepute, contempt, ridicule, and impeached her honesty, integrity, virtue and reputation, was done intentionally to cause Plaintiff distress.

147.    Defendants engaged in the above actions intentionally and recklessly.

148.    Defendants' conduct was extreme and outrageous.

149.    Plaintiff has suffered and continues to suffer severe emotional distress as a result of Defendants' conduct.

### Count 8
**Breach of Contract**
**(Against MCCCD)**

150.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

151.    Plaintiff and MCCCD were in contractual relationship covered by the terms of the RFP and the GWCC College Plan.

18

152. GWCC offered, and Plaintiff accepted, the Program Director position offered to Plaintiff pursuant to the College Plan.

153. MCCCD, through GWCC, breached the contractual relationship with Plaintiff when it allowed Santicola to rescind the Program Director job from Plaintiff.

154. MCCCD also breached the RFP when it failed to provide Plaintiff the due process procedures required by the contract and terminated Plaintiff's employment.

155. The acts described above have caused and continue to cause damages to Plaintiff.

### Count 9
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against MCCCD)

156. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

157. Every contract contains and implied covenant of good faith and fair dealing.

158. MCCCD was in a superior and entrusted position to faithfully adhere to the terms of the contract and Plaintiff's rights therein.

159. MCCCD, through its agents, officers, and employees, concocted false charges against Plaintiff to terminate her because they knew they could not terminate her based on her excellent PARC evaluations. Yet, Defendants took advantage of Plaintiff's probationary status to terminate her under the PARC process without an opportunity to defend herself.

160. MCCCD's conduct was objectively unreasonable and undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's contractual

rights.

161.   The acts described above have caused and continue to cause damages to Plaintiff.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) Declaratory judgment finding that Defendants have violated Plaintiff's constitutional and statutory rights.

b) Actual damages, including back pay and front pay.

c) Compensatory damages resulting from Defendants' discriminatory actions.

d) Compensatory damages resulting from the humiliation, distress, and loss of enjoyment of life that Plaintiff has suffered as a result of Defendants' unlawful and intentional conduct.

e) Punitive damages for the harm Plaintiff has suffered as a result of Defendants' malicious and reckless conduct against Plaintiff.

f) Attorneys' fees and costs under all applicable statutes and law, including, but not limited to, 42 U.S.C. § 1988(b); 29 U.S.C. § 2617; and A.R.S. § 12-341.01.

g) Any other relief the Court deems just and necessary.

**Jury Trial Requested**

//

//

RESPECTFULLY SUBMITTED this 3rd day of August, 2020.

TORRES LAW GROUP, PLLC

_____
James E. Barton II (#023888)
Jacqueline Mendez Soto (#022597)
TORRES LAW GROUP, PLLC
2239 West Baseline Road
Tempe, Arizona 85283
(480) 588-6120
James@TheTorresFirm.com
Jacqueline@TheTorresFirm.com
*Attorneys for Plaintiff*

21