**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Rajasundaram, et al.,<br><br>     Plaintiff,<br><br>vs.<br><br>Maricopa County Community College District, et al.,<br><br>     Defendants. | No. CV-20-01544-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 13) filed pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). The Motion has been fully briefed and is ripe for review. (Docs. 17, 20) For the following reasons, the Motion will be granted.[1]

**I. BACKGROUND**

This case arises from alleged employment discrimination. Plaintiff Sabina Rajasundaram is a former employee of Defendant Maricopa County Community College District (hereinafter "MCCCD"). (Doc. 12 at ¶¶11–16) She is of Asian Indian descent and Indian nationality. (Doc. 12 at ¶9) Plaintiff was hired on or about September 2017 as adjunct faculty to teach Java computer programming courses. (Doc. 12 at ¶¶11,13) In 2019, Plaintiff obtained a resident faculty position at two of MCCCD's schools and a CIS

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Program Director position at one of them, GateWay Community College ("GWCC"). (Doc. 12 at ¶¶11–16) In August of 2019, Defendant Craig Santicola, Chair of MCCCD's Business and Information Technologies Division, told Plaintiff she could not start as a Program Director until the Spring 2020 semester because, as first-year faculty, she was required to focus on teaching. (Doc. 12 at ¶¶20–21) Santicola placed Brian Rice, a white male, in the position instead. (Doc. 12 at ¶23) Plaintiff alleges she complained of discrimination and was demoted from her choice of courses, then her contract was not renewed in retaliation. (Doc. 12 at ¶¶14, 32–42, 52)

On August 4, 2020, Plaintiff filed a Complaint in this Court against MCCCD; the President of GWCC, Maria Wise; and Santicola. (Doc. 1) On October 20, 2020, Plaintiff filed an amended complaint. (Doc. 12) The First Amended Complaint alleges nine causes of action: (1) Fourteenth Amendment equal protection violations against MCCCD and Wise, (2) denial of a property right without due process against MCCCD and Wise, (3) violation of liberty interest under the Fourteenth Amendment against MCCCD and Wise, (4) equal rights violation under 42 U.S.C. § 1981 against all Defendants, (5) FMLA violations against MCCCD, (6) defamation and libel per se against Wise and Santicola, (7) intentional infliction of emotional distress against all Defendants, (8) breach of employment contract and wrongful termination under A.R.S. § 23-1501 against MCCCD, and (9) breach of implied covenant of good faith and fair dealing against MCCCD. (Doc. 12 at 13-24) Plaintiff seeks a declaratory judgment finding her statutory and constitutional rights were violated, and actual, compensatory, and punitive damages. (Doc. 12 at 23–24)

On November 20, 2020, Defendants filed the instant Motion to Dismiss (Doc. 13) Defendants move to dismiss counts one, two, three, four, six, eight, and nine for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Doc. 13 at 2)

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" so the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl.*

2

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Rule 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Typically, on a motion to dismiss, a court may not consider facts outside the pleadings, otherwise the motion to dismiss converts to a motion for summary judgment. *See* Rule 12(d). However, when a plaintiff refers extensively to a document or the document "forms the basis of the plaintiff's claim" the document may be incorporated by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). "When a document is incorporated by reference, 'the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (JLB), 2020 WL 6395629, at *5 (S.D. Cal. Nov. 2, 2020) (quoting *Ritchie*, 342 F.3d at 908).

### III.   DISCUSSION

First, the Court will summarize the relevant facts. Plaintiff, a woman of Asian Indian descent and Indian nationality, was hired around September 2017 to teach Java courses at MCCCD schools as an adjunct residential faculty member. (Doc. 12 at ¶¶9,11,13) MCCCD considers new faculty "probationary" employees for five years. (Docs. 12 at ¶80; 13-1 at 19–21) Probationary employees submit to a review process each year. (Doc. 13-1 at 19–21) A document called the Residential Faculty Policies ("RFP") governs the employment of all MCCCD residential faculty, including probationary faculty. (Doc. 12 at ¶17) Plaintiff did not attach the RFP to the First Amended Complaint, but she references it extensively. (Doc. 12 at ¶¶17,43, 72–87, 116, 127, 129–32, 184–85, 189–90) Defendants attached it to

the Motion to Dismiss. (Doc. 13-1) The RFP is therefore incorporated by reference and the Court may assume its contents are true. *See Khoja*, 2020 WL 6395629 at *5.

Plaintiff alleges Defendants violated the RFP numerous times. The provisions at issue are Sections 3.6. *et seq.* "Probationary Faculty Peer Assistance and Review," 3.8. *et seq.* "Legal Rights," 3.12. *et seq.* "Faculty Member Dismissal—Probationary and Appointive," and 6. *et seq.* "Conflict Management System." (Docs. 12 at ¶¶74–78; 13 at 3, 9, 17) The parties disagree about the interpretation and application of the above sections. The Court will take the terms of the RFP as true and resolve any ambiguities in favor of Plaintiff. *See Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1102 (D. Ariz. 2003) (at the motion to dismiss stage, the district court must "resolve any ambiguities in the considered documents" in plaintiff's favor.) (internal citations omitted).

The alleged discriminatory conduct is as follows: Plaintiff alleges Santicola removed her from her position as CIS Program Director, changed her preferred Java courses to Microsoft Office courses, and switched her class schedule to nighttime instead of day. (Doc. 12 at ¶¶20–21,23,32–42) Plaintiff alleges the changes in courses and schedule came after she complained about her removal from the CIS Program Director position to Amy Diaz, Vice President of Academic Affairs at GWCC. (Doc. 12 at ¶14, 32–42) Plaintiff alleges Defendants put white males in her former roles instead. (Doc. 12 at ¶¶23,32–42) She also alleges she was denied the program director position a second time, contrary to Santicola's prior representations that she would be eligible later. (Doc. 12 at ¶¶40–42) Plaintiff further alleges someone lodged an internal HR complaint against her, also after she complained. (Doc. 12 at ¶29–30) Plaintiff does not know what was in the complaint or who authored it. (Doc. 12 at ¶31) Finally, Plaintiff alleges Wise would not recommend Plaintiff's contract be renewed despite a recommendation of renewal from the Peer Assistance and Review Committee ("PARC"), resulting in the end of Plaintiff's employment with MCCCD. (Doc. 12 at ¶¶49–52) Wise allegedly submitted a letter to the Interim Chancellor with her reasons for recommending nonrenewal. (Doc. 12 at ¶53) The Interim Chancellor referenced Wise's letter in his letter to Plaintiff informing her of the

decision. (Doc. 12 at ¶¶53) The reasons provided were intellectual dishonesty, exploitation of students, not meeting professional standards, and not prioritizing responsibilities. (Doc. 12 at ¶59) Plaintiff claims these reasons and/or allegations were fabricated, and also never discussed with her. (Doc. 12 at ¶¶59–60,62–63) Plaintiff further states she was not given the chance to improve, like other white faculty members "under similar circumstance, such as due process." (Doc. 12 at ¶69)

### A. Count One: Section 1983 Fourteenth Amendment equal protection violations against Defendants MCCCD and Wise

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)).

As a threshold matter, Wise asserts qualified immunity for this claim. (Doc. 13 at 6) "Determining whether [state] officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Martinez v. Town of Prescott Valley*, 467 F. Supp. 3d 786, 792 (D. Ariz. 2020). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (internal quotations omitted). The "clearly established" inquiry must be "undertaken in light of the specific context of the case." *Id.* As to the second prong, there must be more than conclusory allegations that the defendant knew or should have known she was violating the established right. *See Canzoneri v. Prescott Unified Sch. Dist.*, No. CV-20-08033-PCT-SMB, 2020

WL 7047656, at *5 (D. Ariz. Dec. 1, 2020). Furthermore, "[i]f officers of reasonable competence could disagree on whether a course of conduct is constitutional, immunity should be recognized." *Sampson*, 974 F. Supp. 3d at 792 (citing *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (internal quotations omitted)).

A school official is not entitled to qualified immunity on an equal protection claim if the plaintiff can allege facts showing she was treated differently based on her race, because any reasonable school official should know "it is a constitutional violation to treat the employees he or she supervises differently on the basis of race." *Eaglesmith v. Ray*, No. 2:11-CV-00098 JAM, 2011 WL 4738338, at *9 (E.D. Cal. Oct. 6, 2011). The right to equal protection in employment is clearly established. However, the question is whether, by removing Plaintiff from her program director position and not renewing her contract, Wise knowingly violated that right.

First, as Defendants point out in the instant Motion, Plaintiff failed to allege how Wise was involved in removing Plaintiff from her program director position. (Doc. 13 at 7) The First Amended Complaint states it was Santicola who did so. *See supra* Section III. Plaintiff alleges Wise did not recommend her for contract renewal in retaliation for her complaints of discrimination. (Doc. 12 at ¶¶49–52) MCCCD ultimately did not rehire Plaintiff for another year. (Doc. 12 at ¶52) However, Plaintiff does not make any allegations about Wise's state of mind. She asserts Wise recommended nonrenewal to retaliate against her for reporting discrimination but provides no factual basis for the claim.

Typically, the alleged discrimination must be more overt and the official's state of mind more apparent. *See, e.g.*, *Vejo v. Portland Pub. Sch.*, 737 F. App'x 309, 311–12 (9th Cir. 2018) (school officials granted qualified immunity when plaintiff failed to supply facts supporting bare allegations that the termination of her internship as a school counselor was motivated by racial discrimination); *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 978–79 (D. Ariz. 2017) (school board members denied qualified immunity when African-American plaintiff showed she was terminated from her position as superintendent

after a board member told her the board wanted to replace her and her peers with Latino candidates); *Eaglesmith*, 2011 WL 4738338 at *1, 9 (school official denied qualified immunity when they ostracized plaintiff, questioned his spiritual beliefs, used derogatory terms, gave an "unsatisfactory" performance evaluation, and refused to rehire him).

Therefore, because of the lack of allegations about Wise's state of mind, qualified immunity applies to Wise.

As for the claim against MCCCD, Plaintiff alleged in the First Amended Complaint that she was intentionally discriminated against due to her status as a member of a protected class, and that she was also retaliated against for her complaints of discrimination. (Doc. 12 ¶¶112–14) These are technically two different claims, though they are pled as one. The Court will address the racial discrimination claim first.

"Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Vejo*, 737 F. App'x at 311 (internal quotations omitted). Plaintiffs must allege the defendant's actions stemmed from discriminatory motivations. *Id.* at 311–12.

Here, Plaintiff alleged MCCCD intentionally discriminated against her, a female of Asian Indian descent and Indian nationality, by removing her from her position as Program Director and from the classes she preferred. *See supra* Section III. Plaintiff does not allege any facts supporting racial motivation for the actions taken by MCCCD, other than the fact that she was replaced by white males. (Doc. 12 at ¶¶23, 32–42) While she alleges white employees were treated differently after facing the same internal allegations she faces, she fails to name a single specific incident of disparate treatment or supply any facts to support the bare allegations. (Doc. 12 at ¶69) Plaintiff also fails to state why she thinks her removal from her position and ultimate nonrenewal were racially motivated. Her allegations are insufficient to state a claim of intentional discrimination

To state a valid First Amendment claim for retaliation against a government official, a plaintiff must show three things: "that (1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness

7

from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006)).

Plaintiff alleges she was retaliated against after she complained about unfair treatment. *See supra* Section III. The Court finds she has met the first two elements of the claim for retaliation, but not the third: (1) She was engaged in a protected activity by voicing her concerns to an administrator and (2) being removed from a favorable schedule and then terminated would "chill a person of ordinary firmness." *O'Brien*, 818 F.3d at 932. However, she has not pled sufficient allegations to show her complaint was the reason behind Defendant's conduct. Plaintiff claims the removal from her preferred schedule was after she complained about being removed as Program Director and the ultimate retaliation was her termination. *See supra* Section III. She pleads no other facts to show a causal link between the events. In *O'Brien*, the student plaintiff faced a series of sanctions and restrictions from his university directly related to his activities; the sanctions prevented him from engaging in political speech — the protected activity in question. 818 F.3d at 934–35. Here, Plaintiff alleges she was "retaliated against" after complaining, but the internal HR complaint against her is a possible intervening factor. Plaintiff does not know the contents of the complaint, yet she expects the Court to assume the actions against her were directly motivated by her protests to administration, not by the HR complaint. *See supra* Section III. The Court cannot make such an assumption. Therefore, Plaintiff has not properly pled a First Amendment Claim for retaliation.

Overall, Plaintiff fails to state a § 1983 equal protection violation claim against either Wise or MCCCD.

**B. Count Two: Denial of a property right without due process against Defendants MCCCD and Wise**

To state a claim under § 1983 for a denial of due process, a plaintiff must "identify a protected property or liberty interest." *Schwake v. Arizona Bd. of Regents*, 821 F. App'x

8

768, 770 (9th Cir. 2020) (citing *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014)). A constitutionally cognizable property interest in a benefit, like a job, requires more than an abstract desire or unilateral expectation; "there must be a legitimate claim of entitlement." *Guillen-Cervantes*, 748 F.3d at 872 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). "This typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of a benefit "mandatory." *Guillen-Cervantes*, 748 F.3d at 872. Public college employment policies may secure employee interests by creating the terms under which the faculty member is employed. *See Roth*, 408 U.S. at 578 (discussion of plaintiff's appointment terms and the absence of any state university policy regarding re-employment of a fixed-term temporary employee).

A school official is entitled to qualified immunity on a violation of procedural due process claim as long as "their conduct does not violate clearly established law of which a reasonable person would have known." *King v. Garfield Cty. Pub. Hosp. Dist. No. 1*, 641 F. App'x 696, 698 (9th Cir. 2015) (internal citation omitted). "[P]rocedural due process requirements can rarely be considered clearly established[,] at least in the absence of closely corresponding factual and legal precedent." *Id.* (citing *Shinault v. Hawks*, 782 F.3d 1053, 1059 (9th Cir. 2015). *See also Pavel v. Univ. of Oregon*, 774 F. App'x 1022, 1024 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 608, 205 L. Ed. 2d 388 (2019). Unlike the equal protection context, state of mind is irrelevant in the due process qualified immunity analysis. *See King*, 641 F. App'x at 698. If an official reasonably could have believed her conduct was lawful, she is entitled to qualified immunity. *Id.* (citing *Levine v. City of Alameda*, 525 F.3d 903, 906–07 (9th Cir. 2008)).

Plaintiff's employment was governed by the Residential Faculty Policies ("RFP"). (Doc. 12 at ¶17) She was in her probationary period, so the RFP required her to undergo "Probationary Faculty Peer Assistance and Review." (Doc. 12 at ¶43) Probationary faculty are assigned a review committee (the PARC) to evaluate their progress and make a recommendation to the College President on whether to renew the faculty member's

contract. (Doc. 12 at ¶44–45) Plaintiff alleges Section 3.12. of the RFP provides specific due process procedures if a faculty member is recommended for dismissal. (Doc. 12 at ¶78) She alleges Wise (and MCCCD) did not follow those procedures for her dismissal. (Doc. 12 at ¶79) Plaintiff further alleges Section 3.12. created a property right for her continued employment. (Doc. 12 at ¶129) She alleges Wise "concocted false charges against Plaintiff" to terminate her using the PARC process. (Doc. 12 at ¶132) Defendants argue Section 3.6.7.4. applies here, not Section 3.12. (Doc. 13 at 17) Defendants argue the process set forth in Section 3.6.7.4. for probationary employees was followed and Wise did not recommend renewal for Plaintiff, which was permissible under the RFP. (Doc. 13 at 8–9) Defendants state Plaintiff is conflating the terms within the RFP's sections, as well as adding requirements that simply do not exist, to assert her due process violation. (Doc. 20 at 8–9) Taking the facts in the First Amended Complaint and in the document incorporated by reference as true, the Court finds Section 3.6.7.4. governs here.

Section 3.6.7.4.1. states "[w]hile Residential Faculty are originally employed with the intention that they are continuing employees, the Chancellor (upon the advice of a College President) may determine that a Probationary Faculty member's contract not be *renewed*." (Doc. 13-1 at 30) (emphasis added). Section 3.6.7.4.2. requires the College President, here Wise, to recommend to the Chancellor, here the Interim Chancellor, "in writing that the Probationary Faculty member not be renewed," including the reasons for nonrenewal. (Doc. 13-1 at 30) Section 3.6.7.4.3. provides, if the Chancellor agrees, "the Chancellor or designee will deliver the notice of intent to recommend nonrenewal" to the faculty member. (Doc. 13-1 at 30) That notice must also include the reasons for nonrenewal. (Doc. 13-1 at 30) Finally, Section 3.6.7.4.4. states "Probationary Faculty who are nonrenewed are no longer employed as Residential Faculty." (Doc. 13-1 at 30)

Section 3.12. states "[a] Faculty member who is recommended, by the College President, through the Vice Chancellor for Human Resources, *for dismissal* shall have access to the following *due process* procedures." (Doc. 13-1 at 33) (emphasis added). Section 3.12.1. requires the College President to write a statement of charges, which is then

forwarded to the Vice Chancellor for HR, who then reviews the statement and may recommend to the Chancellor there "exists prima facie cause for the dismissal of a Faculty Member. (Doc. 13-1 at 33) "The Vice Chancellor for Human Resources shall inform the Chancellor in writing, with a copy of the recommendation being sent…to the Faculty member at his/her place of residence…" (Doc. 13-1 at 33) Section 3.12.2. states the written statement of charges shall be provided to the Vice Chancellor for HR and the Faculty member "as an attachment to the notification outlined in the preceding paragraph." (Doc. 13-1 at 33)

Plaintiff clearly alleges she was recommended for *nonrenewal*. (Doc. 12 at ¶¶50–53) Although that resulted in her dismissal, she was not recommended for *dismissal* under Section 3.12. Her recommendation for *nonrenewal* came after the yearly PARC process, which is detailed in Section 3.6.7., of which Section 3.6.7.4. is a part. (Docs. 12 at ¶50, 13-1 at 29–30) The facts asserted and the plain language of the RFP show Section 3.6.7.4. was the process in play when Plaintiff was ultimately terminated.

The Court finds Section 3.6.7.4. may establish a property right because it provided a detailed procedure for nonrenewal. This section and the previous section (3.6.7.) establish a bilateral expectation of renewal unless the proper procedure is followed. *See Guillen-Cervantes*, 748 F.3d at 872; *see also Roth*, 408 U.S. at 578.

Under Section 3.6.7.4.1., Wise fulfilled her part in the procedure by putting the charges against Plaintiff in writing and sending them to the appropriate person. Plaintiff has not shown Wise acted in violation of the procedure. Plaintiff argues in her Response Wise was constrained by the criteria of Section 3.6. in making her recommendation to the Interim Chancellor. (Doc. 17 at 3) Having read the RFP, the Court can find no requirement limiting the College President to the criteria considered by the PARC. The RFP states that the PARC makes a recommendation based on the Probational Faculty's Individual Development Plan, which covers the criteria listed in Section 3.6.2. Following the PARC's recommendation, the College President makes her own recommendation to the Chancellor. Following that recommendation, the Chancellor makes a determination. By the very

definition of the word, a recommendation is a "suggestion." *See Recommendation*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/recommendation (last visited March 17, 2021). The RFP does not require the College President follow the same criteria as the PARC when making her own recommendation, or even to follow the PARC's recommendation. Even if Wise was limited to following the Section 3.6.2. criteria, the reasons given for termination fall under 3.6.2.1. Instruction or Primary Work activity. (Doc. 13-1 at 25)

Thus, Wise is entitled to qualified immunity on the due process claim. The Court further finds MCCCD did not violate the procedure for nonrenewal. Plaintiff had a PARC review, the College President provided a written recommendation to the Interim Chancellor, and Plaintiff was notified of her nonrenewal and the reasons for it. There are no further requirements under the RFP.

Plaintiff has failed to state a § 1983 claim against MCCCD for violation of a protected property interest.

### C. Count Three: Violation of liberty interest under the Fourteenth Amendment against Defendants MCCCD and Wise

A terminated public employee "has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004) (citing *Roth*, 408 U.S. at 573). The employee is entitled to a "name-clearing hearing" in such a circumstance, otherwise her Fourteenth Amendment due process right is violated. *Id.* "Public disclosure" has been found in several different circumstances. *See, e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 530 (9th Cir. 2009) (information published in press releases); *Guzman v. Shewry*, 552 F.3d 941, 955–56 (9th Cir. 2009) (reported to a database); *Cox*, 359 F.3d at 1110 (in a letter placed in an employee's file available to the public upon request); *Campanelli v. Bockrath*, 100 F.3d 1476, 1478 (9th Cir. 1996) (in published news articles); *and Graham v. Dysart Unified Sch. Dist. No. 89*, No. CV-10-0507-PHX-MHB, 2010 WL 3401464, at *7 (D. Ariz. Aug. 26, 2010) (at a termination hearing). Whether

information is "stigmatizing" is usually a question of fact, but charges made by an employer have been found stigmatizing when they involve accusations of fraud, "immoral conduct," or "offensive conduct." *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018) (citing *Guzman*, 552 F.3d at 946, *Campanelli*, 100 F.3d at 1480, and *Vanelli v. Reynolds Sch. Dist.*, 667 F.2d 773, 776–78 (9th Cir. 1982)).

The qualified immunity analysis for liberty interest violations hinges on whether the state officer should have been aware that publicizing "stigmatizing" information about the employee was "unlawful absent a name-clearing hearing." *Cox*, 359 F.3d at 1112. Whether the law clearly establishes a right depends on whether there is closely controlling precedent showing the kind of charges made against the employee are considered stigmatizing. *See Kramer*, 878 F.3d at 1163–64.

Plaintiff alleges Wise charged her with intellectual dishonesty, exploitation of students, not meeting professional standards, and not prioritizing responsibilities. *See supra* Section III. It is clearly established in the Ninth Circuit that an "employer charging an employee with… dishonesty … is required under the Fourteenth Amendment to afford that employee a name-clearing hearing." *Kramer*, 878 F.3d at 1164. Of course, the allegation of dishonesty must also be publicly disclosed. *Id.* at 1162. Here, it is unclear whether the letter containing the charges against Plaintiff was publicly disclosed. Plaintiff alleged the letter was "published" to the Interim Chancellor, then again "published" to her. (Doc. 12 at ¶¶142–43) Plaintiff cites no precedent to show sending a letter to another internal employee is publication for the purposes of a § 1983 liberty interest claim. She argues the publication analysis for liberty interest is the same as defamation, and that internal publication is "public disclosure," but this is not so. The Ninth Circuit has held that internal publications, *i.e.*, the publishing of a letter to an employee file, are not publication for the purposes of the liberty interest analysis when they are not subject to external public disclosure. *See Whitworth v. Regents of Univ. of California*, 274 F. App'x 559, 562 (9th Cir. 2008) (distinguishing *Cox*, 359 F.3d at 110–12). Plaintiff did not state that anyone saw the letter besides the Interim Chancellor and herself. Furthermore, even if

the letter was placed in Plaintiff's personnel file, RFP Section 3.9. states "only authorized personnel will be permitted to view employee files." (Doc. 13-1 at 31) Thus, the Court finds the letter was not subject to public disclosure. Without closely controlling precedent, the Court is unable to find a reasonable state officer in Wise's shoes would have known that sending the letter to the Interim Chancellor was a publication of stigmatizing information in violation of plaintiff's liberty interest that entitled her to a name-clearing hearing, because the Court cannot find the action is, in fact, a violation. Therefore, not only is Wise entitled to qualified immunity, but Plaintiff has also failed to sufficiently plead a publication for § 1983 purposes. *See Whitworth*, 274 F. App'x at 562.

### D. Count Four: Equal rights violation under 42 U.S.C. § 1981 against all Defendants

Section 1981 protects the right to enter and enforce contracts of all citizens, regardless of race. 42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must (1) identify a contractual relationship under which her rights have been impaired and (2) "plausibly allege that the defendant impaired that relationship on account of intentional discrimination." *Astre v. McQuaid*, 804 F. App'x 665, 666 (9th Cir. 2020) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) and *Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391 (1982)). "[A § 1981] plaintiff must initially plead and ultimately prove that, *but for* race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. ___, 140 S. Ct. 1009, 1019, (2020) (emphasis added). In other words, a plaintiff must show the defendant would have treated her differently if she were white. *Id.* This but-for test differs from past Ninth Circuit precedent that stated a plaintiff only had to show race played "some role" in the defendant's decision-making process. *Id.*

Plaintiff alleges Defendants denied her the opportunity to continue teaching in the "Year Up Program, Java courses, and daytime courses," which she seems to allege were part of her employment contract. (Doc. 12 at ¶151) She further alleges she was denied her rights under the contract when she was terminated. (Doc. 12 at ¶152) Plaintiff alleges the

14

benefits she was denied were given to males "who were predominantly white," and "white employees have not been terminated or disciplined for actions allegedly engaged in by Plaintiff…" (Doc. 12 at ¶¶153–54) She stated she was removed from teaching specific courses after the HR complaint against her was filed. (Doc. 12 at ¶¶31–37) Plaintiff does not know the contents of the internal complaint or who filed it but alleges it was a retaliatory action by Defendants. (Doc. 12 at ¶¶31,178) It is unclear how Plaintiff knows white employees were treated differently for the same allegations if she does not know the contents of the allegations against her.

In order to meet the "but for" standard of § 1981, Plaintiff would need to show she had been demoted and then terminated for a specific action, then show a white employee who had not been demoted or terminated for the same action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Plaintiff's allegations that white faculty were treated differently are conclusions unsupported by facts. She has failed to state a § 1981 claim.

**E. Count Six: Defamation and libel per se against Defendants Wise and Santicola**

"One who publishes a false and defamatory communication concerning a private person ... is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Norton v. Arpaio*, No. CV-15-00087-PHX-SPL, 2018 WL 5793059, at *4 (D. Ariz. Sept. 25, 2018) (citing *Dube v. Likins*, 216 Ariz. 406, 417 (Ct. App. 2007)). Truth is a defense. *Id.* (citing *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)).

State officials are entitled to immunity when exercising discretionary authority. *Cesare v. Pima, Cty. of*, No. CV1402514TUCCKJEJM, 2015 WL 13741218, at *15 (D. Ariz. Dec. 7, 2015), *report and recommendation adopted sub nom. Cesare v. Pima Cty.*, No. CIV142514TUCCKJEJM, 2016 WL 836873 (D. Ariz. Mar. 4, 2016). "State officials

are acting within their discretionary authority when they set policy or perform an act that inherently requires the exercise of their judgment or discretion." *Id.* (quoting *Carroll v. Robinson*, 178 Ariz. 453, 457 (Ct. App. 1994)).

Plaintiff claims Wise and Santicola defamed her when Wise wrote a letter to the Interim Chancellor "falsely accusing Plaintiff of intellectual dishonesty, exploitation of students, not meeting professional standards, and not prioritizing responsibilities." (Doc. 12 at ¶¶50,57,59-60) Plaintiff's First Amended Complaint states Santicola "collaborated" with Wise. (Doc. 12 at ¶61, 167–68) However, Plaintiff only Wise's name is alleged to be on the letter to the Interim Chancellor and he allegedly cited only Wise in the termination letter to Plaintiff. (Doc. 12 at ¶52,57,170)

Defendants deny the statements were false and argue even if they were, they were (1) made while Wise was exercising discretion, (2) made internally and (3) mere statements of opinion, which cannot be defamatory. (Doc. 13 at 14–15) While the Court disagrees that the latter two points absolve Wise, the Court does find she was exercising discretionary authority when she wrote the letter containing the statements at issue.

RFP Section 3.6.7.4.2. states "If, after reviewing the PARC recommendation, the College President determines the Probationary Faculty member should not be renewed, the College President shall recommend to the Chancellor in writing that the Probationary Faculty Member not be renewed. The recommendation shall include the reasons for nonrenewal." (Doc. 13-1 at 30)

Plaintiff argues in her Response the reasons given for nonrenewal were outside the factors considered by the PARC and were thus outside Wise's discretionary authority under the RFP. (Doc. 17 at 11) Plaintiff argues because the RFP also states "If the [conditions of Section 3.6.] are not met, the probationary period may be extended an additional semester for each deficient semester," (Doc. 13-1 at 14), she should have not been recommended for nonrenewal. (Doc. 17 at 11) The Court views the language provided by the Plaintiff and the plain language of the RFP to mean that it was up to the College President's discretion to recommend Plaintiff for renewal or nonrenewal. The RFP does not say the President is

required to follow the recommendation of the PARC, be it for renewal or nonrenewal. Plaintiff was not automatically entitled to another semester of probation.

Moreover, Arizona state courts have historically found privilege in similar situations. *See Petroni v. Bd. of Regents*, 115 Ariz. 562, 565–66 (Ct. App. 1977) (finding officers who determine academic tenure are entitled to absolute immunity from defamation claims).

Therefore, because Wise was a state official exercising discretionary authority, the Court will apply qualified immunity to her. Furthermore, the Court sees no reason the defamation claim should go forward against Santicola. The allegations against him are entirely conclusory and there are no facts alleged to support them.

**F. Count Eight: Breach of employment contract and wrongful termination under A.R.S. § 23-1501 against MCCCD**

Claim Eight is technically two claims; a breach of the offer of employment and a breach of the RFP, both brought under the Arizona Employment Protection Act ("AEPA"), specifically A.R.S. § 23-1501. As a threshold matter, the statute of limitations to bring a breach of contract claim under AEPA is one year, as set forth in A.R.S. § 12-541(3). *See Shumway v. DHL Express (USA), Inc.*, No. CV 06-1188-PHX-DKD, 2008 WL 11338792, at *4–6 (D. Ariz. Sept. 29, 2008). Defendants argue the breach of the offer of employment is barred by the statute of limitations. (Doc. 13 at 16) Plaintiff was "informed in writing" on August 3, 2019 that she would not be offered the Program Director position for the fall semester. (Doc. 13 at 16) Plaintiff filed the initial Complaint on August 4, 2020 — one day after the year statute of limitations expired. (Doc. 1) Plaintiff argues the statute of limitations may be tolled if the defendant fraudulently concealed the cause of action. (Doc. 17 at 16) Plaintiff argues because she was unfamiliar with GWCC's College Plan and because Santicola was not forthcoming about the requirements for Program Director, her cause of action did not accrue until September of 2019. (Doc. 17 at 16–17) Defendants respond Plaintiff should have been on notice of the possible claim in August and nothing Santicola said to her prevented her from realizing she would not be offered the Program

Director position. (Doc. 20 at 12)

Arizona courts toll the statute of limitations for fraudulent concealment. *Diaz v. Arizona*, No. CV 11-02337-PHX-FJM, 2012 WL 1203692, at *4 (D. Ariz. Apr. 11, 2012), *aff'd*, 555 F. App'x 698 (9th Cir. 2014). However, the burden is on the plaintiff to prove such concealment occurred. *Id.* "The doctrine of fraudulent concealment is invoked only if the plaintiff pleads and proves facts showing that defendants 'affirmatively misled' them, and that plaintiffs 'had neither actual nor constructive knowledge of the facts giving rise to [their] claim despite [their] diligence in trying to uncover those facts." *Id.* (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.1988)). Plaintiff here has failed to show Defendants "affirmatively misled" her despite her "diligence in trying to uncover [the] facts." *Id.* The Court will not toll the statute of limitations and finds it has run on the breach of the offer of employment claim.

Turning to the breach of the RFP claim, Defendants claim the RFP is not an employment contract under the AEPA and thus Plaintiff cannot bring this claim. (Doc. 13 at 16) Alternatively, Defendants argue Plaintiff has failed to plead a breach. (Doc. 13 at 17) Plaintiff argues A.R.S. §§ 23-1501(A)(1) and (2) identify her employment as contractual, the RFP dictated the terms of her employment, her employment was intended to be continuing, and she was unlawfully terminated, constituting a breach. (Doc. 17 at 16)

"The employment relationship is contractual in nature." A.R.S. § 23-1501(A)(1). Employment relationships are severable at will unless there is a written, signed contract stating otherwise or if the employment handbook "expresses the intent that it is a contract of employment" and sets forth restrictions on the right of either party to terminate the employment relationship. § 23-1501(A)(2). *See also Corzo v. Maricopa Cty. Cmty. Coll. Dist.*, No. CV-15-02552-PHX-ESW, 2016 WL 3392264, at *4 (D. Ariz. June 14, 2016). Therefore, the RFP must express the intent that it is a contract. *See id.* The Court examined the language in Sections 1.1.3. and 1.1.4. of the RFP and found it parallel to the language the employee plaintiff in *Corzo* cited from the MCCCD information technology employee handbook, which was found to sufficiently indicate an intent that the handbook was a

contract of employment. No. CV-15-02552-PHX-ESW, ECF Nos. 16 at 5–6, 22 at 2 (D. Ariz. 2016). The RFP states that the Faculty and Administration adopted it to establish the terms and conditions governing employment. (Doc. 13-1 at 9) The Court finds this language sufficient to establish intent that the RFP is an employment contract under A.R.S. § 23-1501(A)(2).

As to whether there was a breach, the Court found Section 3.6.7.4. applied to Plaintiff's employment and nonrenewal and that Defendant followed the procedure set forth in Section 3.6.7.4. during her nonrenewal process. *See supra* Section III.B. Therefore, Plaintiff has failed to plead a breach of employment contract claim as to the breach of the RFP against MCCCD.

### G. Count Nine: Breach of implied covenant of good faith and fair dealing against MCCCD

As Defendants state in their Motion to Dismiss and as Plaintiff fails to address in her Response, this Court has held AEPA precludes claims for the breach of implied covenant of good faith and fair dealing. S*ee Thorp v. Home Health Agency--Arizona, Inc.*, 941 F. Supp. 2d 1138, 1143 (D. Ariz. 2013) (citing A.R.S. § 23–1501(3)(a)–(c)). When a terminated employee brings claims under AEPA, as Plaintiff does here, she cannot also bring a claim for the breach of implied covenant of good faith and fair dealing. *Id.* This claim therefore will be dismissed.

Therefore,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is **granted**.

**IT IS FURTHER ORDERED** that Counts One, Two, Three, Four, Six, Eight, and Nine are **dismissed with prejudice**.

Dated this 24th day of March, 2021.

Honorable Steven P. Logan
United States District Judge